IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA
Plaintiff

vs

**1) FRANCISCO NUECI-PENA**
2) JOSE INEDUAR FONSECA-RAMIREZ
3) NAPOLEON CABRERA,
a/k/a Gabriel Zarate-Ramírez
4) OSCAR MESA-ZAMBRANO
**5) JAVIER MITCHEL HUNTER**
6) PEDRO SAFIR BELTRAN-ZAPATA

Defendants

CRIMINAL 07-0088CCC

**O R D E R**

Defendant Javier Mitchell-Hunter, arrested on February 23, 2007 on the high seas and charged in a two-count indictment with aiding and abetting and conspiring to possess with intent to distribute multi-kilograms of cocaine and heroin on board a vessel subject to the jurisdiction of the United States in violation of 46 U.S.C. §§70503(a)(1) and 70506(b), filed on October 23, 2007 a Motion to Dismiss for Lack of Jurisdiction Over the Vessel and Request for Evidentiary Hearing together with co-defendant Francisco Nueci-Peña (**docket entry 104**)[1] claiming, among other things, that the United States never had jurisdiction over the vessel under 46 U.S.C. §70502(c). Defendants contended that, while the government relied on the assertion of a Coast Guard officer that the master of the vessel had claimed Colombian registry that led to contacting the Colombian Navy which responded that it could neither confirm nor refute said claim of registry, thereby rendering the vessel one without nationality, the vessel was in fact registered in Venezuela, as claimed by the master, overheard by three of the co-defendants and referenced in an affidavit of an F.B.I. agent

---

[1] The motion was later joined by the other co-defendants (see docket entries 105, 106 & 108).

submitted in support of the criminal complaint.[2]  Defendants insisted that since no contact had been made with the Venezuelan government to verify that claim of registry, the United States never had jurisdiction over the vessel and, consequently, over the defendants.

The United States opposed the motion on December 3, 2007 (docket entry 118), reaffirming that the master of the vessel had made a claim of Colombian registry and that pursuant to that claim an inquiry was made with the Colombian Navy which neither confirmed nor refuted the master's claim, rendering the vessel one without nationality, subject to the jurisdiction of the United States.  In support of its factual averments, the government attached to its opposition the following documents: (1) a sworn statement by Petty Officer Canaval, a part of the Coast Guard boarding team, who declared that defendant Nueci identified himself as the master and made a verbal claim of Colombian registry during the interdiction, and (2) a Certification by the State Department detailing the steps taken during the interdiction of the vessel on February 23, 2007 and the Colombian Navy's response that neither confirmed nor denied the master's claim of registry.  The government later filed a Supplemental Opposition on January 22, 2008 (docket entry 132), which contained a Supplemental Certification by the State Department that reasserted the steps taken contemporaneously with the interdiction with regard to the claim of Colombian registry and also included the response to an inquiry made by the U.S. Coast Guard on January 15, 2008 to the Venezuelan Coast Guard which neither confirmed nor denied the master's claim of the vessel's Venezuelan registry.

On February 20, 2008, the U.S. Magistrate-Judge rendered his Report on the dismissal motion (**docket entry 140**), recommending that the same be denied.  No objections were ever filed to that Report by any of the defendants.  The Court adopted it on April 9, 2008, thus denying defendants' October 23, 2007 Motion to Dismiss (docket entry 152).

---

[2] None of these allegations were supported by affidavits or other documentary evidence.  Although movants initially requested an evidentiary hearing, the parties subsequently agreed that it was unnecessary (docket entry 135).  The end result was that the U.S. Magistrate-Judge to whom the matter was referred had only unsupported assertions by defendants' regarding the stateless vessel issue.

On December 24, 2008, eight months after the Court's denial and now represented by new counsel, defendant Mitchell-Hunter filed a "Motion in Support of his Request to Allow the Reopening of Hearing on Motion to Dismiss for Lack of Jurisdiction" (**docket entry 266**). The title is a misnomer since there was no hearing to be reopened regarding his initial dismissal motion for lack of jurisdiction given that the parties had agreed that a hearing was not necessary. The December 24, 2008 filing was instead a request for the Court to reexamine the jurisdictional issue based on an analysis pursuant to Crawford v. Washington, 541 U.S. 36 (2004), claiming that the certifications of the State Department submitted to support the stateless vessel's finding constituted testimonial evidence. Movant concluded at page 11 of his Motion that:

> For the United States to prove that a particular nation granted or disavowed national ownership or registration of the vessel it must be compelled to produce witnesses to that end. The United States should not, where the jurisdictional issue is in question, be allowed to simply rest on a [Statement of No Objection] that deprives the defendant of his fundamental right to confront his accuser.

On May 7, 2009, the U.S. Magistrate-Judge filed a Supplemental Report and Recommendation (**docket entry 305**). The primary reason discussed in the Report and Recommendation for recommending denial of the supplemental Motion to Dismiss (docket entry 266) is the well settled principle that the right to confrontation is a trial right. The U.S. Magistrate-Judge specifically stated that "neither the Sixth Amendment right to confront adverse witnesses, nor the Supreme Court's holding in Crawford, applies to the Court's pretrial consideration of the certification offered to prove that the vessel was without nationality, pursuant to the MDLEA." R&R at p. 6. The Magistrate-Judge also found that to the extent that defendants might have a right to cross-examine Commander Welzant, Coast Guard Liaison Officer to the Bureau of International Narcotics and Law Enforcement Affairs of the U.S. Department of State, regarding his declaration, they had waived that right. He specifically made reference that, at a status conference held before he issued his original R&R, he inquired whether any of the defendants believed that an evidentiary hearing was necessary and defense counsel indicated that it was not and that the jurisdictional issue could be resolved based on the filings before the Court, referring to the minutes of that status conference (docket entry 135). The Magistrate-Judge pointed out that as of the date of the Supplemental Report and Recommendation, May 7, 2009, defendant Mitchell-Hunter

CRIMINAL 07-0088CCC                                   4

had not made any proffer of evidence that would suggest that the contents of the certifications was unreliable.

By the time that the Supplemental Report and Recommendation was issued, the attorney who had filed the supplemental Motion to Dismiss, Jorge Vega-Pacheco, had requested and been granted leave to withdraw for reasons stated in his motion and discussed in the Court's Order (docket entries 268 & 279). The third defense counsel designated by the Court on February 3, 2009, Rafael Castro-Lang (docket entry 280), had also filed a motion to withdraw as Mr. Mitchell-Hunter's defense counsel on March 18, 2009 (docket entry 297) which was left in abeyance due to an unrelated sealed matter which is discussed in a sealed Order dated May 21, 2009 (docket entry 306). The May 7, 2009 Supplemental Report and Recommendation was also held in abeyance due to this matter, which was resolved in July 2009. On July 20, 2009, the Court issued an Order granting Mr. Castro-Lang's motion to withdraw legal representation and designating attorney Rachel Brill, who filed her appearance on July 28, 2009 and requested until September 14, 2009 to raise objections to the Supplemental Report and Recommendation (docket entry 314). On October 10, 2009, additional time to file such objections was requested and defendant was granted until November 3, 2006 (docket entries 321 & 322). On that date, defense attorney informed the Court that she had suffered a fracture and needed another extension until November 19, 2009 (docket entry 323). The Court, considering that defense attorney had suffered an injury in an accident, granted an extension until December 3, 2009 (docket entry 326). Following a December 23, 2009 Order (docket entry 329), defendant's objections were submitted on December 29, 2009 (docket entry 330).

Taking up on the Confrontation Clause violation raised in the supplemental Motion to Dismiss, defendant argued that the certifications of Commander Welzant regarding inquiries made to Colombia and to Venezuela submitted by the government in support of its view that the vessel was one without a nationality fell squarely within the core class of testimonial statements listed in Crawford. Additionally, movant argues that the recent case of Meléndez-Díaz v. Massachusetts, 129 S.Ct. 2527 (2009), strongly supports his contention that the Welzant declarations meet the Crawford criteria. His final argument is that "neither the State Department nor Commander Welzant was authorized under the MLDEA (sic) to

make the statements contained in the Certifications at issue." Objections (docket entry 330), at p. 11. We shall address the Confrontation Clause and the statutory challenges separately.

**Constitutional challenge based on the Confrontation Clause**.

The jurisdictional issue before the Court is whether defendants, prosecuted for aiding and abetting each other and conspiracy to possess with intent to manufacture and distribute a controlled substance on board a vessel subject to the jurisdiction of the United States, were aboard a stateless vessel or vessel without nationality as defined in 46 U.S.C. §70502(d)(1)(a)(b)&(c). Section 70504(a) provides as follows:

> (A) Jurisdiction.- Jurisdiction of the United States with respect to a vessel subject to this chapter is not an element of an offense. Jurisdictional issues arising under this chapter are preliminary questions of law to be determined solely by the trial judge.

As stated earlier, defendant concedes that this issue must be raised and decided before trial, yet claims that because of the importance of the matter he is entitled under the Sixth Amendment to confront the witnesses. In this case, confrontation of the witness means requiring Commander Welzant, who is the declarant who signs the certifications of the Department of State, to testify as to the content of such certifications instead of allowing the certifications alone as evidence that the vessel was stateless. Citing cases dating back to 1970 and 1968, the Supreme Court in 1987 decided Pennsylvania v. Ritchie, 480 U.S. 39, 52, 107 S.Ct. 1989, 1999 (1987), where it rejected the notion that the Confrontation Clause could be transformed into a "constitutionally compelled rule of pretrial discovery." It affirmed that "the opinions of this Court show that the right to confrontation is a trial right, designed to prevent improper restriction on the types of questions that defense counsel may ask during cross-examination" and that "the right to confront one's accusers is satisfied if defense counsel receives wide latitude at trial to question witnesses." It further stated, citing from Westen, The Compulsory Process Clause, 73 Mich.L.Rev. 71, 125-126 (1974), that "[t]he right of confrontation is exclusively a 'trial right' . . . It does not . . . require the government to produce witnesses whose statements are not used at trial." Ritchie, at p. 54, n. 10. Crawford does not depart from this interpretation of the focus of the Confrontation Clause. As stated by the Court, the various formulations of testimonial statements "all share

a common nucleus." 541 U.S. at p. 50.  The common denominator lies in the belief or reasonable expectation of the declarant that the statement would be used at a later trial against the accused. Except for recognized exceptions, the Supreme Court has understood that dispensing with confrontation is tantamount to dispensing with a criminal jury trial.  Its mission is clearly defined in Chief Justice Rehnquist's concurring opinion where he states, quoting from Kentucky v. Stincer, 482 U.S. 730, 737, 107 S.Ct. 2658 (1987) and Maryland v. Craig, 497 U.S. 836, 845, 110 S.Ct. 3157 (1990), that

> [t]he right to cross-examination, protected by the Confrontation Clause, thus is essentially a "functional"' right designed to promote reliability in the truth-finding functions of a criminal trial.... The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact.

The Court of Appeals in United States v. Vilches-Navarrete, 523 F.3d 1 (1st Cir. 2008), held that "there is no constitutional infirmity in Congress's explicit allocation in section 70504(a) of the question of whether a vessel is 'subject to the jurisdiction of the United States' to the Court, rather than the jury for decision.  That allocation was well within the power of Congress."  After referring to the offense statute, section 70503(a)(1), which criminalizes the knowing or intentional manufacture, distribution or possession with intent to distribute a controlled substance on board a vessel, the Court made this clear distinction:

> whether a vessel was subject to the jurisdiction of the United States has no bearing on whether defendants manufactured, distributed or possessed with intent to distribute a controlled substance or whether they did so knowingly or intentionally. The question of whether a vessel is subject to the jurisdiction of the United States does not relate to whether a defendant committed the proscribed actus reus or possessed the necessary mens rea. As such it does not meet the common law definition of an element.

Vilches-Navarrete, 523 F.3d at 21.  Citing United States v. Tinoco, 304 F.3d 1008, 1108 (11th Cir. 2002), it explained that the reason for the "subject to jurisdiction" provision in the Maritime Drug Law Enforcement Act (MDLEA), that is, the requirement that a vessel be subject to the jurisdiction of the United States, was a matter of "diplomatic courtesy to foreign nations and as a matter of international comity."  Citing United States v. González, 776 F,2d 931, 940 (11th Cir. 1985),  it characterized as "misleading . . . to consider [a foreign nation's] consent an element of the offense; rather it is a diplomatic requisite illustrating the international partnership that ensures the rule of law on the high seas."

In <u>United States v. Angulo-Hernández</u>, 555 F.3d 2, 11 (1st Cir. 2009), the Court of Appeals confronted the defendant's argument on appeal that the MDLEA violates the Confrontation Clause because it allows jurisdiction to be proven through a certificate from the State Department without allowing defendants an opportunity to cross-examine the certifying declarant.  The response to that challenge by the Court was a reference to the jurisdictional provision, §70504(a), which establishes that jurisdiction under such Act is not an element of the offense; it is a preliminary question of law to be determined solely by the trial judge.  The Court of Appeals also made reference to <u>Vilches-Navarrete</u>, 523 F.3d at 20, where it had previously asserted that the jurisdictional issue of whether a vessel is subject to the jurisdiction of the United States is not an element of the crime and is allocated to the court rather than the jury for decision.  Given this allocation to the judge, prior to trial, and given the opinions of the Supreme Court that the right to confrontation is a trial right, defendant's argument that the importance of the jurisdictional issue in a case such as this requires transforming the Confrontation Clause into a constitutional right before trial is unavailing.

When the Court of Appeals decided <u>Vilches-Navarrete</u> and <u>Angulo</u> in 2008 and 2009, it was well aware of the <u>Crawford</u> criteria.  <u>Meléndez-Díaz</u> has not expanded nor modified <u>Crawford</u>.  In fact, the discussion in Mélendez-Díaz focused exclusively on documents that had been introduced at trial which the Court deemed to be testimonial.  Thus, there is no departure from the Court's treatment of the right to confrontation as a trial right.

**Statutory challenge based on former 46 U.S.C. §70502((d)(2)**.

The MDLEA defines the term vessel without nationality by referring to three specific situations in which a vessel is considered stateless.  The statute provides:

(d) Vessel without nationality.-

(1) In general.- In this chapter, the term "vessel without nationality" includes-

(A) a vessel aboard which the master or individual in charge makes a claim of registry that is denied by the nation whose registry is claimed;

(B) a vessel aboard which the master or individual in charge fails, on request of an officer of the United States authorized to enforce applicable provisions of United States law, to make a claim of nationality or registry for that vessel; and

> (C) a vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality.

The section 70502(d)(2) which was in effect during the relevant time period in this case reads:

> (2) Verification or denial.– A claim of registry under paragraphs (1)(A) or (C) may be verified or denied by radio, telephone, or similar oral or electronic means. The denial of such a claim is proved conclusively by certification of the Secretary of State or the Secretary's designee.

This statutory provision was amended on January 28, 2008 to refer to the State Department certification as conclusive proof not only in situation (A) which refers to denial by the nation whose registry is claimed but also in situation (C) when the nation of registry neither confirms nor denies that the vessel is of its nationality.

When defendant argues that the two State Department certifications issued in this case are unauthorized, his reasoning is that before the January 28, 2008 amendment to 46 U.S.C. §70502(d)(2) the statute provided that the certification of the Secretary of State relative to statelessness was conclusive proof of the denial by the nation whose registry was claimed by the master and no mention was made that such a certification would prove conclusively that the claimed nation of registry neither affirmed nor denied the claim, referring to subsection (1)(C) of §70502(d). Thus, the Welzant certifications that the two foreign nations neither affirmed nor denied the claim of registry, it is averred, were unauthorized under the statute. In other words, that since a State Department certification addressing a §70502(d)(1)(C) situation, such as the Welzant certifications, is not expressly mentioned in the version of §70502(d)(2) in effect at the time of the interdiction as proving conclusively that the claimed nation of registry neither affirmed nor denied that the vessel is of its nationality, such certifications are inadmissible in evidence.

The Court, however, does not confront an issue of admissibility but rather of weight and level of certainty of the evidence. That the certifications of the State Department in this case do not rise to the category of conclusive proof, since the situation of neither affirmance nor denial contemplated in §70502(d)(1)(C) was not incorporated into the verification provision of the statute until its amendment in January 28, 2008 (see P.L. 110-181, Div. C, Title XXXV, §3525(a)(6)), is not grounds for their exclusion as "unauthorized" under the statute. It is important to note that the situation of neither affirmance nor denial by the

nation of registry was as much a ground for declaring a vessel without a nationality as was the denial of the claim of registry by the nation at the time that the Coast Guard intervened on February 23, 2007, pursuant to § 70502(d)(1)(A) & (C). It is illogical to conclude that because the verification section, 46 U.S.C. § 70502(d)(2), limited the State Department certifications' effect as conclusive proof to "denial," until its amendment in January 28, 2008, a court confronted with a jurisdictional determination could not use that same certification as relevant evidence, albeit not conclusive, on that issue.

In sum, defendant's argument goes to the weight, not to the admissibility of the evidence. Given the wording of the statute at the time the offense was committed in 2007, the Court could not, under its terms, consider the Welzant certifications as conclusive proof. Conclusive proof, also termed conclusive evidence, has been defined as "[e]vidence so strong as to overbear any other evidence to the contrary" and "[e]vidence that so preponderates as to oblige a fact-finder to come to a certain conclusion." Black's Law Dictionary, p. 596 (8th ed. 2004). That does not mean, however, that the Court was precluded from considering the certifications at all. In fact, even before State Department's certifications were considered conclusive proof, courts established that such certifications constituted rebuttable prima facie evidence of statelessness. See e.g. Tinoco, 304 F.3d at 1114; United States v. Devila, 216 F.3d 1009, 1015, n. 4 ($11^{st}$ Cir. 2000). Defendant has not explained why relevant evidence that is classified at a lower level of evidentiary probativeness than conclusive proof must be excluded from the Court's consideration in reaching its pretrial jurisdictional determination. Given that these certifications are admissible, relevant to the jurisdictional issue and the only evidence presented to the Court on the question of the vessel's statelessness, the Court properly considered them in deciding jurisdiction under the MDLEA.

For the reasons stated, the Objections to Magistrate's Supplemental Report and Recommendation filed by defendant Mitchell-Hunter on December 29, 2009 (docket entry 330) and joined by defendant Francisco Nueci-Peña on January 26, 2010 (docket entry 332) are OVERRULED, the Supplemental Report and Recommendation issued by U.S. Magistrate-Judge McGiverin (**docket entry 305**) is APPROVED and ADOPTED, and

defendant Mitchel-Hunter's Motion in Support of His Request to Allow the Reopening of Hearing on Motion to Dismiss for Lack of Jurisdiction (**docket entry 266**) is DENIED.

The jury trial will be reset by separate Order.

SO ORDERED.

At San Juan, Puerto Rico, on February 26, 2010.

                                                                       S/CARMEN CONSUELO CEREZO
                                                                       United States District Judge